## In re RANDELL.
### Patent Appeal No. 3169.

Court of Customs and Patent Appeals.

Dec. 23, 1933.

Ralph R. Randell, pro se.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant's application relates to "Improvements in Art of Measuring Fluid Flow in Open or Non-pressure Channels." Five claims stand allowed; one of these apparently being allowed by the Examiner and four by the Board of Appeals of the United States Patent Office, the Examiner's decision as to these four being reversed by the latter tribunal. The Board affirmed the Examiner's rejection of claims 1, 2, 5, 6, 7, 8, 9, 11, 12, and 14, and appellant here seeks review of the Board's decision so rejecting them.

It is proper to state that appellant, who prepared his own brief and acted as attorney for himself in the proceedings before this court, says, in a special communication filed before the hearing, that he concedes "reasonable room for difference of opinion" relative to claims "such as Claims 1 or 2," which concession was reiterated by him in his short oral statement at the hearing before us; the concession being "because so general" in character.

Of the ten claims rejected and here upon appeal, appellant does not select any particular one or ones as being typical. The Board of Appeals quoted Nos. 1 and 13 of the application; the former being for the apparatus, and the latter being for the method employed. No. 13 stands allowed. No. 14, which was rejected, is also a method claim. We therefore quote it with claims Nos. 1 and 6:

"1. In an apparatus for approximately determining fluid flow, the combination of a main open channel, a secondary channel connecting two places in the main channel, means for gradually changing the hydraulic characteristics of flow in the main channel between said places approximately in a stream-line manner so as to cause a flow in the secondary channel approximately proportional to the flow in the main channel and at the same time to conserve substantially without unnecessary loss the mechanical energy of the flowing fluid, and a meter actuated by the flow in the secondary channel."

"6. In an apparatus for approximately determining fluid flow, the combination of a main open channel the size of a part of which differs from that of the adjacent parts, a secondary channel connecting two places in the main channel one of which is at the cross-section containing such part so that the difference of size causes a flow in the secondary channel approximately proportional to the flow in the man channel, and a meter actuated by the flow in the secondary channel."

"14. In open channel proportional fluid-metering, the method of maintaining proportionality between the flows through the measured and the unmeasured channels which consists in maintaining a free fluid surface in the measured channel at its control section for substantially all conditions of flow within the range to be metered."

The references relied upon are: Tilden, 783,486, February 28, 1905; Tuttle, 816,280, March 27, 1906; Englebright, 1,080,052, December 2, 1913; Stevens, 1,418,032, May 30, 1922.

The application may be generally described as relating to the measurement of the

flow of fluid, water being the most common example, in open or nonpressure channels. By means of appellant's device and plan, the main channel is provided with a constricted portion and a by-pass; the latter having a meter placed therein which is connected with the constricted portion in such a manner as that the meter can be calibrated to give the flow in the main channel.

The Examiner gives a detailed description of the operation in his statement which it is not deemed necessary to repeat here. The calibration of the meter to indicate the flow in the main channel is made possible, according to the opinion of the Board of Appeals, by the arrangement whereby the flow in the secondary channel, or by-pass, is always approximately a predetermined proportion of the flow in the main channel.

The principal reference is Stevens; the other references being cited, as stated in the brief of the Solicitor for the Patent Office, "merely as examples of meters located in by-passes around constrictions to give a reading proportional to the flow in the main channel."

The devices in Tilden and Tuttle seem to be for use only in pipes, while that in Englebright is for use in open top channels, but teaches the proportional dividing of the water, the smaller proportion to flow through a pipe and meter placed therein.

The patent to Stevens is stated in the specification thereof to be "directed broadly to a water meter for measuring the volume of flow in an open channel or flume, such as used for irrigation, water power, sewage and so forth." A constricted area is formed in the channel or flume by depressing a cover member placed thereover, which increases the velocity of the water. Two members, or features, designated as "wells" are provided, one of which is connected to the flume "just above the meter of constricted area," and the other connected thereto "at the constricted area or throat." It is stated that "The difference in the water levels between the open flume just above the meter and that in the well at the throat is an index of the velocity of the water passing the throat."

In connection with the wells, there are devices such as floats, cables, and guide pulleys which operate a recording device.

In brief, the appealed claims were rejected on the ground that there would be no invention involved in connecting the two wells of Stevens by means of a pipe containing a meter as disclosed by Englebright, Tilden, or Tuttle, and it was held by the Board of Appeals, in substance, that, even if the limitations relied upon by appellant to differentiate from the prior art were construed to exist in his appealed claims, they are all amply covered by the claims which were allowed him.

Appellant in his brief argues that there are two fundamental respects in which the references fail to anticipate his invention.

The first of these is, in substance, that the main channels in the prior art are not open, but closed, and that therefore they are "inherently incapable of functioning, as appellant's, to pass floating debris without clogging and interfering with the flow of the water, and stoppage or impairment of the operation of the measuring device itself."

Appellant insists that his claims "specify with sufficient clearness and definiteness an open channel adapted to pass floating debris."

As we understand the decision of the Board of Appeals, that tribunal agreed with appellant upon this contention, in so far as allowed claims 3, 4, 10, and 13 were concerned, and allowed them for that reason. It would seem that, as to this feature, therefore, appellant is fully protected by such allowance, and the failure to allow a multiplicity of claims for the same feature works no hardship upon him, nor deprives him of any legal right to which he was entitled. Even were it found that some of the claims disallowed did embrace this feature clearly and distinctly and that the Board of Appeals erred in holding otherwise, it would not be reversible error; his invention in this respect being already fully protected. In re Pondelicek, 47 F.(2d) 353; 18 C. C. P. A. 1008; In re Einstein, 46 P.(2d) 373, 18 C. C. P. A. 885.

The second claimed fundamental difference between the prior art and appellant's claims is alleged by him to lie "in the control section which controls the flow through the by-pass channel so as to keep it proportional to the total flow to be measured."

The Board of Appeals did not specifically discuss any of the contentions relative to the particular structure of appellant's control-section, but states that "It is the Examiner's view that it is patentably immaterial whether the stream be constricted from the sides and bottom or from the top," and, we assume, agreed therewith.

Careful consideration has been given to appellant's argument on this point, and the rejected claims have been carefully scrutinized and analyzed in connection with the allowed claims, as was necessary in this case, with this argument in mind. We fail to find in the rejected claims any elements of struc-

ture designated which, in our opinion, differentiates from the prior art in any manner not fully covered by such designations as appear in the allowed claims. It seems to us that the allowed claims cover all the invention which appellant discloses, and we find no reversible error in the rejection of the claims brought here for review.

After the Board had rendered its decision in the case, appellant filed a request for reconsideration of rejected claims 6, 9, 11, 12, and 14, and sought to amend same "so as to clearly specify strictly *open* channels," arguing that in the Board's decision the effectiveness of the language of said claims to so specify had been for the first time questioned. Apparently it was insisted that the Board's expressions upon that element of the stated claims constituted a new ground of rejection.

The Board, holding that it was not a new ground of rejection, for the reasons by it stated, "entitling applicant to continue the prosecution of the case," declined to recommend entry and allowance of the proposed claims, citing Ex parte Moore, 1923 C. D. 13.

Appellant's tenth reason of appeal alleges this refusal to have been error.

Under the facts of this case we do not think there was any error in this action of the Board, nor any violation of Rule 139 of the Patent Office. The expressions in the original decision of the Board we regard as being sufficient to disclose that this was not a ground of rejection advanced for the first time by it.

It may be added that, even had the amendment been granted as to the feature sought, that feature seems to be fully covered in the allowed claims, and no additional protection would result to appellant from a grant of matter already cared for.

The decision of the Board of Appeals is affirmed.

Affirmed.